By the Court.—O’Gorman, J.
On October 14, 1882, the plaintiffs, composing the firms of McGinnis Bros., and Fearing & Parmenter commission merchants in grain, contracted to sell for the defendant, and on his account, eight thousand bushels of No. 2 corn, at 70ff cents per bushel “ short,” deliverable any time during the year 1882 at the seller’s option.
Defendant deposited with plaintiff as margin, the sum of $600. Between said October 14, and the subsequent November 23, at 12 noon, the said corn advanced in price, reaching at that day and hour 85i cents a bushel; and on the preceding day, defendant’s margin was exhausted, and plaintiff wrote to send them his check for $550, as more *104 margin. On that same day, November 22, 1882, the defendant wrote to plaintiffs in answer, declining to send the check, but offering to give his note for $600, and that that would be acceptable to plaintiffs.
On the morning of November 23, the defendant called at the office of the plaintiffs, and had an interview with Edward McGinnis, the senior member of the firm. No other person was present at. the interview, and each of these gentlemen gives a different and conflicting account of the conversation which then occurred between them.
McGinnis swears that the defendant said he could not advance any more, and used the words: “You had better cover it,” that is to say, close the transaction by buying in the corn and delivering it.
The defendant, Smythe, on the other hand, testifies that McGinnis said to him : “ Let me close you out; let us buy that boat load, and we will take what ready money you can give us, and your note for the balance ;” that he, defendant, emphatically declined that proposition ; that he did not want to be closed out, and would not be clósed out, and did not authorize a purchase, and that the interview closed, the matter being left, as far as appears on the evidence, undetermined.
On that same day, November 23, at ten minutes to twelve, the plaintiffs caused the corn to be purchased at the price of 85¿ cents a bushel, by Roland Smythe, one of their agents, who was a son of the defendant.
Somewhat later on the same day, the book-keeper of the plaintiffs received a message by telephone, which purported to come from the defendant, Smythe, in these words: “ Tell my son, Roland, to cover my short sale when it eases up a little.” This message was immediately telephoned to Roland Smythe, who answered that it had teen covered. The corn was purchased at the price of cents a bushel.
The corn market did, in fact, ease later on that day, and continued to fall in price until December 28, when it reached 66J cents a bushel for corn such as that which de *105 fendant had contracted to sell. Thus, if the plaintiffs had not purchased the corn for the defendant on November 23, but had waited until December 28, and had then purchased at that price and closed his contract by delivery, there would have been coming to the defendant from the plaintiffs $355 on the contract-, in addition to the $600 deposited by him as margin, making in all $958, for which sum he prayed judgment by way of counter-claim, in his answer.
On November 24, the day after the purchase made by the plaintiffs, defendant, as he testified, called on one of the plaintiffs’ firm and repudiated the purchase, as unauthorized by him.
It is in evidence that the defendant never had any transaction in corn with the plaintiffs other than this in suit, and that it was the only transaction in corn that he ever had.
There is no evidence of any special contract between plaintiffs and defendant as to supplying margin, and it is admitted that the defendant from time to time, since November 23,1882, demanded of plaintiffs that they should purchase the corn for him, and deliver it according to the contract.
No error appears to have been committed on the trial.
The course taken by the court as to the damages, does not seem to have been erroneous. No particular instruction to the jury on this subject was asked by the plaintiff, nor was any objection made to the charge of the court. The defendant made several demands down to the time fixed, as the point for the assessment of the damages. If the contract were open at the time of any particular demand that it should be closed, and the plaintiff did not accede to such demand, the defendant, at his option, concedes the contract to be on foot, after the demand, and in this way entitled himself to the benefit of a future demamL
The learned trial judge charged the jury as matter' of law, that the notice given to defendant by the plaintiffs, according to defendant’s version, was not sufficient to *106 enable them to close him out without further direction, and in the charge he is sustained by the authority of controlling decisions (Gruman v. Smith, 81 N. Y. 25; Baker v. Drake, 66 Id. 518; Markham v. Jaudon, 41 Id. 235; Knowlton v. Fitch, 52 Id. 288 ; Stenton v. Jerome, 54 Id. 480 ; White v. Smith, 54 Id. 522, 526). He left the jury to determine, as a matter of fact, which of the witnesses they would believe as to the interview of November 23. There was no evidence of any waiver of notice by the defendant. The jury found a verdict for the defendant, and there was enough of evidence to sustain the verdict.
The judgment of the court below should be affirmed, with costs, and the order denying a new trial, affirmed, with $10 costs.
Freedman, J., concurred.
Sedgwick, Ch. J.
The course taken by the court as to the damages, does not seem to have been erroneous. No particular instruction to the jury was asked by the plaintiff, nor was any objection made to the charge of the court on this point. The general principle, that the court acted on, was correct.
I concur with Judge O’Gorman.